FILED

2005 Oct-12  AM 09:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE CRYSTAL IMPORT CORPORATION,     ]
                                    ]
        Plaintiff(s),               ]
                                    ]
    vs.                             ] CV-04-CO-03545-S
                                    ]
AVID IDENTIFICATION SYSTEMS, INC. and]
DIGITAL ANGEL CORPORATION,          ]
                                    ]
        Defendant(s).               ]

MEMORANDUM OF OPINION

This is a civil action for treble damages brought pursuant to Sections

1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; and  Section 3 of the

Clayton Act, 15 U.S.C. § 14.  Plaintiff has also asserted claims under the

Lanham Act, 15 U.S.C. § 1125(a), and Alabama state laws.

The plaintiff, The Crystal Import Corporation, (hereinafter "Crystal "),

alleges defendants AVID Identification Systems, Inc., ("AVID"), and Digital

Angel Corporation ("Digital Angel") have colluded to restrain and monopolize

trade in the United States market for radio frequency identification ("RFID")

transponders and readers used to identify and aid in the recovery of missing

or lost animals by manufacturing transponders and readers using only the 125

kHz frequency and taking steps to exclude the import of transponders and receivers using the 134.2 kHz frequency which is used in Europe and other areas of the world.  The cause is before the Court for consideration of Defendants' motions to dismiss, transfer, or stay. (Doc. 20-21, 23-24.) Plaintiff has been afforded an opportunity to respond (Doc. 27, 28, 29) and the motions are ready for decision.

For the reasons set forth herein,  Digital Angel's motion to dismiss will be denied.  AVID's motion to dismiss for lack of personal jurisdiction will be denied.  The Court finds the motions to transfer are due to be granted and, accordingly, the motions to stay are moot.

I.     Digital Angel's Motion to Dismiss.

Crystal asserts the following claims against Digital Angel: (1) AVID and Digital Angel attempted to monopolize the national RFID chip market by: (a) encrypting AVID's chip to exclude other chips; (b) entering into a cross-licensing agreement that neither company would utilize 134.2 kHz technology with the intent to exclude 134.2 kHz chips from entering the market;  (c) making false and misleading statements to the public, including statements that Digital Angel's chips are ISO compliant; (d) instituting

multiple frivolous and meritless patent infringement suits against Crystal, MMI and others to exclude other chips from the market; all in violation of § 2 of the Sherman Act (Count 3); (2) the same activities were undertaken by AVID and Digital Angel in an attempt to monopolize the RFID reader market, also in violation of § 2 of the Sherman Act (Count 4); (3) AVID and Digital Angel violated § 1 of the Sherman Act by entering into agreements to, among other things, restrain trade in the U.S. market for RFID chips and readers to their proprietary 125 kHz standard and thereby exclude competition offering 134.2 kHz chips and readers (Count 5);   (4) AVID and Digital Angel's activities, conduct, and agreements constitute an illegal conspiracy to monopolize the RFID chip and reader market in the United States in violation of § 2 of the Sherman Act (Count 6); (5) AVID and Digital Angel engaged in unfair competition in violation of § 43(a) of the Lanham Act by misrepresenting the characteristics and qualities of Crystal's product (Count 10); and (6) in Counts 9, 11, 12, and 13, Crystal asserts claims against AVID and Digital Angel under Alabama state law for antitrust violations under Alabama Code § 8-10-3 (Count 9), deceptive trade practices under § 8-19-1 (Count 11), tortious interference (Count 12), and a disparagement (Count

13).   As discussed below, Digital Angel has presented many arguments in support of its motion to dismiss all the counts against it.

A.     Standard.

There is no heightened pleading requirement in antitrust cases, and the plaintiff need only make "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004).  Therefore, the threshold requirements for properly pleading an antitrust violation are "exceedingly low." *Covad Communications Co. v. BellSouth Corp.*, 299 F.3d 1272, 1279 (11th Cir. 2002). Accordingly, absent some doctrine which immunizes the alleged conduct, such as the Noerr-Pennington doctrine, dismissal on the pleadings is particularly disfavored in fact-intensive antitrust cases. *Andrx Pharmaceuticals, Inc., v. Elam Corp., PLC*, 2005 WL 2061009 (11th Cir. August 29, 2005), *citing Covad*, 299 F.3d at 1279.

B.    Discussion

      1.    Market Share.

Digital Angel contends Counts Three, Four and Six must be dismissed because Crystal alleges Digital Angel has a 40% share in the RFID transponder and reader national market, and the Eleventh Circuit has held that "[a] market share at or less than 50% is inadequate as a matter of law to constitute monopoly power." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1250 (11th Cir. 2002)(affirming summary judgment for a liquid propane distributor on competitor's claims of price discrimination in violation § 2 of the Sherman Act as amended by the Robinson-Patman Act, because expert's testimony was insufficient to establish that distributor had sufficient market power to recoup losses from allegedly discriminatory below-cost pricing).  Crystal correctly points out that it has not attempted to allege misuse of monopoly power, as was the case in *Bailey*, but has alleged an attempted monopolization (Counts Three and Four) and conspiracy to monopolize (Count Six).  *See American Tobacco Co. v. United States*, 328 U.S. 781, 785 (1946) (affirming criminal convictions for conspiracy to monopolize and attempt to monopolize and approving jury instructions stating "[t]he phrase

'attempt to monopolize' means the employment of methods, means and practices which would, if successful, accomplish monopolization, and which, though falling short, nevertheless approach so close as to create a dangerous probability of it, which methods, means and practices are so employed by the members of and pursuant to a combination or conspiracy formed for the purpose of such accomplishment.").

        2.     Joint Monopolization.

*Citing Alabama Ambulance Svc., Inc. v. City of Phenix City*, 71 Fed. Supp. 2d 1188, 1196 (M.D. Ala. 1999)(Albritton, J.), Digital Angel argues Count Six must be dismissed because there is no cause of action for conspiracy to achieve a shared monopoly since a shared monopoly is not illegal monopolization.   However, Judge Albritton did not purport to conclude that all shared monopolies are per se legal.  Rather, he concluded that, because the joint activity in the case before him was not illegal monopolization, the defendants could not be liable for conspiracy to monopolize. *Id.* at 1196-97 ("Because this court has found that the alleged activities of [defendants] do not amount to an activity that can be considered illegal monopolization, CRHS can not be found liable for

conspiracy to monopolize, either.    See Antitrust Law Developments 305 (noting that "where the alleged conspiracy, if successful, would not amount to illegal monopolization, there may be no liability for conspiracy to monopolize") . . .").

   3. Counts Nine, Ten and Eleven.

  Digital Angel contends Count Nine, in which Crystal alleges Digital Angel misrepresented the characteristics and qualities of Crystal's goods, services, and activities, and Count Eleven, in which Crystal alleges that Digital Angel made false and misleading statements about Crystal's RFID products in its commercial advertising, must be dismissed because Crystal has not identified any specific false and misleading statements or specifically identified the commercial advertising which included allegedly false or misleading statements. Additionally, Digital Angel argues Count Eleven must be dismissed because Crystal failed to state a claim for product disparagement or trade libel in that it did not plead with particularity any statements made in advertising or promotion about goods, services, trademarks or the like that travel in interstate commerce.  Digital Angel also contends that Count Ten for tortious interference should be dismissed

because Crystal has failed to plead with particularity any facts to support its allegations other than the contentions that Digital Angel is pursuing patent enforcement actions against Crystal and MMI.

There is no heightened pleading requirement in antitrust cases. *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1077.  In Counts Nine, Ten and Eleven, Crystal has satisfied its burden of making "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

    4.    Sham Patent Litigation.

Digital Angel also contends Counts Three and Four must be dismissed because those antitrust claims are premised on allegations that the patent litigation instituted by Digital Angel is a sham, and Crystal has not sufficiently alleged facts establishing the patent litigation is "objectively baseless."[1] In this regard, Digital Angel argues it has successfully enforced its

---

[1]    Although the Sherman Antitrust Act proscribes activity in restraint of trade, its effect is limited by the First Amendment guarantee of the right to "petition the Government for a redress of grievances."  Accordingly, a defendant is immune from Sherman Act liability for concerted actions to petition the government to pass legislation which would have the effect of restraining or monopolizing trade in favor of the defendant.  *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).  *Noerr-Pennington* antitrust immunity has been extended to defendants who exercise their right to petition government through initiation of administrative or judicial proceedings.  *California Motor*

'129 Patent in Colorado District Court and the United States Court of Appeals for the Federal Circuit, and Crystal has never claimed in Minnesota that Digital Angel's '129 patent litigation there is a sham.

As set out above, Counts Three and Four are not entirely premised on Digital Angel's patent litigation.  Furthermore, Crystal has sufficiently notified Digital Angel under Rule 8(a)(2) that Crystal intends to support its antitrust claims with evidence that Digital Angel has brought baseless patent litigation against Crystal with the subjective intent to directly interfere with Crystal's business relationships.  No more is necessary at this stage of the litigation.  Although the Digital Angel alleges that it has successfully enforced its '129 patent in federal court, it has not established that the previous

_____

*Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  However, there is an exception to *Noerr-Pennington* immunity when the defendant engages in "sham litigation." *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).  To establish the sham litigation exception, a litigant must show: (1) the lawsuit is objectively baseless because no reasonable litigant could realistically expect success on the merits; and (2) the party brought the allegedly baseless suit with the subjective intent to *directly* interfere with the business relationships of a competitor. *Id.* at 60-1.  Probable cause to bring a lawsuit is sufficient to show litigation was not "objectively baseless," and a winning lawsuit is manifestly not a sham. *Id.* at 60 n. 5, 62. *See generally* Andrx Pharmaceuticals, Inc. v. Elam Corp., PLC, 2005 WL 2061009 (11th Cir., Aug. 29, 2005)(affirming District Court's judgment on the pleadings rejecting claim that patent litigation was sham where two courts had previously rejected Plaintiff's argument that patent was invalid due to on-sale bar).

patent litigation was sufficiently similar to the litigation asserted against Digital Angel. *Compare Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, ___ F.3d ___, 2005 WL 2061009 (11th Cir. Aug. 29, 2005)(affirming grant of judgment on the pleadings where patentholder's argument had prevailed in two courts, establishing that patent litigation was not a sham). As discussed below, the District Court in Minnesota will be better able to make a determination of the reasonable objectiveness of Digital Angel's patent litigation.

       5.    Anti-trust Injury.

      To have standing to sue for treble damages under § 4 of the Clayton Act, or for injunctive relief under § 16 of the Clayton Act, a plaintiff must allege an "antitrust injury" in the sense of an injury of the type that the antitrust laws were intended to prevent and that flows from, or is causally related to, the defendant's antitrust violation. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 (1986). *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519

(1983) (listing factors to be considered in evaluating standing of antitrust plaintiff, including causal connection between the alleged antitrust violation and harm to plaintiff and injury of the type that antitrust laws were meant to prevent).

Digital Angel contends Counts Three, Four, Five and Six must be dismissed because Crystal has failed to properly allege an antitrust injury in that its preclusion from the market for RFID readers and transponders emanates from the defendants' assertion of their rights as patent holders to preclude others from producing their patented work. Schering-Plough Corp. v. FTC, 402 F.3d 1056 (11th Cir. 2005); *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346 (Fed. Cir. 1999); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547 (Fed. Cir. 1997), *overruled by Cybor Corp. v. Fas Technologies Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (overturning *Eastman* based on law of patent claim construction).  As discussed above, Crystal has asserted several bases for its alleged injury, only one of which is the defendants' prosecution of patent litigation against Crystal. Furthermore, the particulars of the patent litigation are not before this Court so there is no basis to determine its "objective reasonableness."  Therefore, the

motion to dismiss will be denied without prejudice to raising this issue in a properly filed motion for summary judgment.

II.    Personal Jurisdiction of AVID.

    A.    Standard.

When, as in this case, the Court does not conduct an evidentiary hearing on the question, the burden is on the plaintiff to establish a *prima facie* case of personal jurisdiction over a non-resident defendant. *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citations omitted). To establish a *prima facie* case, the plaintiff must present enough evidence to withstand a motion for a directed verdict. *Id*. To the extent they are uncontroverted by the defendants' evidence, the Court must accept the allegations in the complaint as true and all reasonable inferences must be drawn in favor of the plaintiff. *Id*.

    B.    Discussion.

A federal district court may exercise personal jurisdiction over any party who is subject to the jurisdiction of the state in which the court sits. Fed. R. Civ. P. 4(k).  Alabama's long arm statute permits the exercise of jurisdiction over non-resident defendants to the fullest extent allowed under

the due process clause.  Ala. R. Civ. P. 4.2(a)(2)(I).  *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000). "Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Consolidated Development*, 216 F.3d at 1291; *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).   The sufficiency of the defendants contacts with the forum state depends on the quantity and quality of those contacts and the type of personal jurisdiction being asserted, specific or general. *Id*.

For a court to exercise general personal jurisdiction, so that a non-resident can be called to defend a cause of action unrelated to its contacts with the forum, there must be a showing that the non-resident had "continuous and systematic general business contacts" with the forum state. *Consolidated Development*, 216 F.3d at 1291;  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).

A court can exercise specific personal jurisdiction over a non-resident when the non-resident's activities in the forum state are related to the cause

of action alleged in the complaint. *Consolidated Development*, 216 F.3d at 1291. These "minimum contacts" are sufficient only where it is shown the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The "minimum contacts" requirement is grounded in fairness and assures that the defendant's conduct and connection with the forum State is such that it should reasonably anticipate being haled into court there. *Id.*; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299, or by the "unilateral activity of another party or a third person." *Helicopteros de Nacionales*, 466 U. S. at 417; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Arguing this Court can exercise both general and specific personal jurisdiction over AVID, Crystal points to:

(1)     its allegation that AVID regularly solicits and does business in Alabama (Complaint ¶ 5) and the affidavit of Caroline Voitier (Doc. 28)(stating she easily purchased an AVID transponder for her cat, Quincy, on April 9, 2005, at a veterinary clinic in the Northern District of Alabama; she received an AVID brochure, AVID collar tag, and AVID certificate; and she was told AVID would keep Quincy's information on file for her);

(2)     Evidence that, on its web site, AVID represents that it has established a "disaster recovery program" with the Alabama Veterinary Medical Association (Drucker Affidavit, Doc. 29, Ex. 2)(printout from http://www.flex.net/~avid/pets/uspettrac.html); and

(3)     its contention that AVID advertises in national publications and on the internet to solicit sales in Alabama.[2]

As discussed above, this Court must accept Crystal's allegations and evidence as true to the extent they are not refuted by AVID's evidence. AVID has submitted the affidavit of its president, Hannis L. Stoddard, III, DVM, in support of its motion to dismiss. (Stoddard Decl., Doc. 24.)  Dr. Stoddard

---

[2]     Crystal did not provide a citation to its complaint or the evidence to support this last assertion.  (Doc. 27, p. 40.) However, AVID admits it maintains a non-interactive web site.

stated that AVID is a California corporation with its principal place of business in California, and that AVID has been manufacturing and selling RFID technology in the United States for over two decades. He further stated that AVID is not licensed to do business in Alabama, it does not have any employees or facilities in Alabama, nor does it maintain any real or personal property in Alabama. AVID does not have any salesperson, sales representative, organization, or other agent or entity in Alabama that is authorized to act on AVID's behalf. Although AVID advertises nationally, no advertisement is specifically targeted toward Alabama. Dr. Stoddard continues, "AVID has customers in Alabama but the number is insignificant compared to our total number of customers nationwide." *Id.*

AVID's evidence refutes Crystal's contentions that it regularly does business in Alabama. AVID's contacts with Alabama are not so substantial, continuous, and systematic to permit this Court to exercise general personal jurisdiction over AVID's affairs.

However, AVID's sales in Alabama, coupled with its arrangement with the Alabama Department of Veterinary Medicine permit this Court to exercise specific jurisdiction over claims related to those activities. While

the monopoly claims in this lawsuit are based on an alleged nation-wide monopoly, the evidence that AVID's Alabama sales are "insignificant compared to [AVID's] total number of customers nationwide"[3] indicates that any AVID monopoly would necessarily depend little on its Alabama contacts. Nevertheless, this Court cannot say the nation-wide monopoly claims are wholly unrelated to the Alabama sales.  Accordingly, this Court concludes it can exercise specific personal jurisdiction over AVID for the claims raised in this lawsuit and AVID's motion to dismiss for lack of personal jurisdiction will be denied.

III.    Forum Non-Conveniens.

    A.    Standard.

A change of venue between federal district courts is permitted by 28 U.S.C. § 1404(a).  Although § 1404(a) was based upon the doctrine of forum non conveniens, a lesser showing of inconvenience is required for a § 1404(a) transfer than for a dismissal pursuant to the doctrine of forum non conveniens. *Norwood v. Kirkpatrick*, 3409 U.S. 29 (1955).  Section 1404(a) is a "'federal housekeeping measure' allowing easy change of venue within a

---

    [3]    (Stoddard Decl., Doc. 24.)

unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981), citing *Van Dusen v. Barrack*, 376 U.S. 612, 613 (1964). The decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion. *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982) (citations omitted). Although they are not exclusive, § 1404(a) establishes factors which should be considered in evaluating a transfer, providing, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404 (a). "This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Norwood*, 349 U.S. at 32. The statute provides for an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen*, 376 U.S. at 622. *See generally, Ross v. Buckeye Cellulose Corp.*, 918 F.2d 648, 655 (11th Cir. 1993) (finding that district courts did not abuse their discretion in transferring actions under § 1404 (a) where all records relevant to suit were located in transferee district and it was reasonable for district courts to

assume that the overwhelming majority of witnesses whose testimony might be relevant to the trial of claims resided in transferee district).

IV.   Discussion.

AVID and Digital Angel argue this action should be transferred to the District of Minnesota, where the parties are presently engaged in patent litigation initiated by Digital Angel against Crystal and two other defendants.[4] Digital Angel is a Minnesota corporation and AVID concedes that the Minnesota Court can exercise personal jurisdiction over it due to its business connections with Digital Angel, therefore this Alabama action "might have been brought" in Minnesota.  28 U.S.C. § 1404(a).

For the purpose of deciding the motion to transfer venue, the following facts are determined based on the allegations of the complaint and the evidence submitted by the parties in connection with the present motions:

_____

[4]Crystal contends that the appropriateness of transfer should be evaluated through application of the factors set forth in *Gulf Oil Co. v. Gilbert*, 330 U. S. 501, 508 (1947)(clarifying the application of forum non conveniens in federal courts) and that great deference should be given to the plaintiff's choice of forum, citing *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004)(discussing dismissal of action pursuant to doctrine of forum non conveniens).  As discussed above, the standard for transfer of venue pursuant to § 1404 is broader than the standard for dismissal on forum non conveniens grounds.  Although the Court has considered Crystal's factual arguments against the change of venue, it has evaluated the issue pursuant to 28 U.S.C. § 1404, rather than forum non conveniens.

All of the parties are in the business of manufacturing and selling RFID products, including RFID transponders and readers for use in the identification of animals.  Because the technologies operate at different frequencies, the transponders produced by Crystal are not detectable by the readers produced by AVID and Digital Angel and the transponders produced by AVID and Digital Angel are not detectable by Crystal's readers.  In September 2003, Crystal began selling its transponders and readers in the United States and its largest customer is Medical Management, Inc. ("MMI"), an entity which licenses and operates pet hospitals throughout the United States.  In May 2004, AVID sued MMI for unfair competition and false advertising in California state court and obtained a preliminary injunction requiring MMI to notify its customers that its transponder could not be read by the readers primarily used in veterinary clinics and shelters throughout the United States.  Also in May 2004, AVID initiated litigation against Crystal and others in the Eastern District of Texas, alleging Crystal's RFID chips and readers infringe AVID's U.S. patents.  In October 2004, Digital Angel sued Crystal and others in the District of Minnesota, alleging Crystal's RFID chips and readers infringe U.S. patents held by Digital Angel.  The litigation in

California, Texas, and Minnesota is ongoing.  In this lawsuit, Crystal alleges the defendants have conspired and attempted to attain monopoly power in the United States RFID market, and have misused monopoly power to exclude others from the United States RFID market.

Although Crystal alleges other forms of antitrust activity, the ongoing patent litigation, which Crystal contends is sham litigation, is a large component of the activity allegedly undertaken by the defendants to gain unfair competitive advantage.  Therefore, a major factual component in this antitrust litigation is whether the patent litigation initiated by the defendants in Minnesota and Texas is a sham.

Further, as observed above, although the defendants' activities are sufficiently connected to Alabama to confer personal jurisdiction in this Court, the activity allegedly undertaken by Digital Angel and AVID with the intent to monopolize and misuse monopoly power in the United States RFID market bears little connection to Alabama.  Most, if not all, of the discovery activities in this litigation will occur outside this state. Therefore, it is apparent that Alabama is the least convenient forum for witnesses and parties in this antitrust litigation.

From the information before this Court, Minnesota is the only venue where AVID and Digital Angel are present.  Although AVID is a California corporation, the Court accepts AVID's assertion that its business connections with Digital Angel makes Minnesota the more convenient forum for the witnesses AVID might have to produce for deposition or trial.  Minnesota is clearly the more convenient forum for Digital Angel and the witnesses it might produce.  Although Crystal contends Alabama is its preferred forum, it has not pointed to any Alabama witness who might have knowledge about the alleged antitrust activity which underlies this lawsuit.

Accordingly, this Court finds the Minnesota venue is the most convenient forum for the majority of the parties and witnesses in this action.


V.    Conclusion.

For the reasons set forth herein, the defendants' motions to dismiss will be denied. The Court finds the motions to transfer are due to be granted and this action will be transferred to the District of Minnesota, pursuant to 28 U.S.C. § 1404.  The motions to stay are moot.  A separate order will be entered.

Done this <u>11th</u> day of <u>October 2005</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153